IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TERRY CORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-64-SMD |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*,[1] ) | |
| ) | |
| Defendant. ) | |

## **OPINION & ORDER**

In June 2018, Plaintiff Terry Core ("Core") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI. He alleged disability beginning December 10, 2017. Core's application was denied at the initial administrative level, and he received an unfavorable decision after a hearing before an Administrative Law Judge ("ALJ"). Core then appealed the ALJ's decision to the Social Security Appeals Council (the "Appeals Council") and submitted new evidence. The Appeals Council denied review and concluded that there was not a reasonable probability that the new evidence would change the ALJ's decision. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Core now appeals that decision

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action under Federal Rule of Civil Procedure 25(d)(1).

under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned reverses and remands the Commissioner's decision.[2]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 20); Def.'s Consent (Doc. 19).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[4] ("Grids") or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.     STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court

---

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[6]

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Core, who was fifty-one years' old at the time of the ALJ's decision, has completed the twelfth grade and has past work experience as a material handler and parts inspector. Tr. 223, 95, 265-66, 305, 336. He alleged disability due to back pain, hypertension, anxiety, and pre-diabetes. Tr. 264-65.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for Core's disability determination. At step one, the ALJ found that Core has not engaged in substantial gainful

---

[6] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

4

activity since his alleged onset date. Tr. 38. At step two, the ALJ found that Core suffers from the following severe impairments: "spine disorder and chronic obstructive pulmonary disease (COPD)[.]" Tr. 39. At step three, the ALJ found that Core "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 42.

The ALJ proceeded to determine Core's RFC, articulating that he "has the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 42. At step four, the ALJ utilized the testimony of a VE and determined that Core is "capable of performing past relevant work as a parts inspector." Tr. 47. In the alternative, the ALJ concluded that, "[c]onsidering [] [Core's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform." Tr. 48. Accordingly, the ALJ determined that Core had not been under a disability from December 10, 2017, through the date of his decision. Tr. 49.

## IV.   ANALYSIS

Core asserts that the ALJ's RFC determination is not supported by substantial evidence. Core contends, *inter alia*, that the ALJ (1) erred in concluding that his urological issues did not constitute a severe impairment and (2) that, even if his urological issues are rightly considered non-severe, the ALJ erred by not considering them during the RFC determination. Pl.'s Br. (Doc. 12) pp. 9-11. For the following reasons, the undersigned

remands this matter to the Commissioner for further evaluation of Core's RFC. As remand is warranted on this argument, the undersigned declines to address Core's other arguments.

### A. The ALJ did not err in finding that Core's urological issues were not a severe impairment.

At step two of the sequential evaluation process, it is the claimant's responsibility to prove he has a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). An impairment is severe if it significantly affects a claimant's ability to perform work related functions. *Turner v. Kijakazi*, 2021 WL 3276596, at *7 (M.D. Ala. July 30, 2021) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987)).

"[T]he ALJ must consider the medical severity of the claimant's impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019) (internal quotations omitted) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)); 20 C.F.R. § 404.1520(a)(4)(ii). "This step is a threshold inquiry and allows only claims based on the most trivial impairments to be rejected." *Id.* at 1265 (internal quotations omitted) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (explaining that step two in the evaluation process acts as a filter). Put differently, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to proceed with the rest of the five-step analysis." *Id.* (internal quotations omitted) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Thus, if the ALJ finds a severe

impairment and proceeds to step three of the process, any failure to find a claimant's other conditions to be severe impairments is considered harmless error. *Id.* at 492-93 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Here, substantial evidence supports the ALJ's finding that Core's urological issues were not severe. During step two, the ALJ thoroughly discussed the relevant medical records from East Alabama Urology Associates and East Alabama Medical Center. Tr. 40-41. Moreover, to the extent the ALJ erred in his determination that Core's urological issues are not a severe impairment, that error is harmless. At step two, the ALJ found that Core had severe impairments consisting of "spine disorder and chronic obstructive pulmonary disease." Tr. 39.  Because the ALJ found Core suffered from other severe impairments, the evaluation process continued to step three regardless of the ALJ's determination that Core's urological issues are not a severe impairment. Therefore, because classifying Core's urological issues as a severe impairment would not have impacted the process at step two, the undersigned concludes that any mistake in considering them a non-severe impairment is harmless error.

### B.  The ALJ's RFC determination is not supported by substantial evidence.

The RFC assessment is an assessment of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An RFC determination is within the authority of the ALJ and the assessment should be based on all relevant evidence of a claimant's ability to work despite his impairments. *Beech v. Apfel*, 100 F. Supp. 1323, 1330 (S.D. Ala. 2000) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440

(11th Cir. 1997)). The ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ must, however, provide a sufficient rationale to link the evidence to his RFC determination. *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. *Schink*, 935 F.3d at 1268-69 (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). Even if an ALJ states that he has "considered all symptoms," his RFC determination is not supported by substantial evidence if his decision demonstrates that he did not. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064-65 (11th Cir. 2021).

In *Pupo*, the claimant alleged, *inter alia*, that she suffered from stress urinary incontinence, and that it should be considered a severe impairment. 17 F.4th at 1059-60. The ALJ disagreed, finding that it did not constitute a severe impairment. *Id.* at 1059-60. The ALJ also declined to address the effect of the claimant's stress urinary incontinence on her RFC. *Id.* at 1059-60. Rather, the ALJ merely stated that he "considered all symptoms." *Id.* at 1064. The Eleventh Circuit held that this was not sufficient to show that the ALJ had considered all severe and non-severe impairments when evaluating the claimant's RFC. *Id.* at 1064-65. The Court reasoned that although the ALJ stated that he "considered all symptoms," his decision demonstrated that he did not. *Id.* at 1064. It pointed to the fact that the ALJ had not considered the claimant's stress urinary

incontinence during the RFC assessment. *Id.* at 1064-65. The Court further explained that, even though the ALJ noted in his decision that the claimant had been treated for incontinence, he did not discuss how her incontinence would impact her ability to perform work at the ALJ's suggested RFC level. *Id.* at 1065. The Court stressed that this was particularly troubling considering the claimant had seen numerous medical providers about her incontinence. *Id.*

Like the ALJ in *Pupo*, the ALJ here was required to consider all of Core's impairments when evaluating his RFC. Identical to the ALJ in *Pupo*, the ALJ here began his RFC section by stating that he had "considered all symptoms[.]" Tr. 42. Although courts have previously found this language sufficient to show that the ALJ adequately considered the impacts of a claimant's severe and non-severe impairments, the Eleventh Circuit holds otherwise in *Pupo*. *See Pupo*, 17 F.4th at 1064-65 (holding that that the ALJ's mere statement that he "considered all symptoms" is not sufficient to show that the ALJ considered severe and non-severe impairments during his RFC determination); *contra Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014) (per curiam) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)) (holding that an ALJ's statement that he "considered all symptoms" in determining the claimant's RFC is sufficient to show he considered all necessary evidence). Indeed, even though the ALJ explicitly noted that he "considered all symptoms," he made no mention of any impairments regarding urological issues beyond his step two determination that the issues did not constitute a severe impariment. *See* Tr. 42-47. Although the ALJ is not required to

9

cite to every piece of evidence contained in the record in determining an RFC, *Dyer*, 395 F.3d at 1211, the ALJ is required to provide a sufficient rationale linking the record evidence to the RFC determination, *Keeton*, 21 F.3d at 1066. Based on the ALJ's reasoning contained in the RFC section, it is not clear that he considered Core's urological issues when making his RFC determination. Without any discussion of the non-severe impairments, this Court cannot conclude that the ALJ's assessment is supported by substantial evidence.[7]

Additionally, although the ALJ discussed Core's urological problems in some detail during his step two analysis, *see* Tr. 40-41, his duty to consider severe and non-severe impairments for RFC purposes remains unsatisfied. The ALJ's consideration of urological issues at step two does not show that he considered their impact on Core's ability to work at steps four and five. *See Pupo*, 17 F.4th at 1065 (explaining that although the ALJ had discussed the claimant's treatment for incontinence in his decision, he had not explained how her incontinence would affect her ability to work at the suggested RFC level). Therefore, the undersigned concludes that the ALJ's RFC determination is not supported by substantial evidence. As such, the case is reversed and remanded for further consideration of Core's RFC.

---

[7] For example, during his hearing testimony, Core stated that, due to his urological issues, it was possible that he would have to take three or more additional bathroom breaks throughout the day in addition to the morning, lunch, and afternoon breaks typically provided to workers. Tr. 93. Given this possible limitation on his ability to perform work, it is necessary for the ALJ to consider that impairment when evaluating Core's RFC.

## V.   CONCLUSION

Accordingly, the decision of the Commissioner is REVERSED and REMANDED. A separate judgment will issue.

DONE this 9th day of September, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE